967 F.2d 583
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
AMERICAN TITLE INSURANCE COMPANY, A Florida Corporation,
Plaintiff-Appellant,
v.
FIRST COMMERCIAL TITLE, INC., A Nevada Corporation,
Defendant-Appellee.
AMERICAN TITLE INSURANCE COMPANY, A Florida Corporation,
Plaintiff-Appellee,
v.
FIRST COMMERCIAL TITLE, INC., A Nevada Corporation,
Defendant-Appellant.
 Nos. 90-15947, 90-16660.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted June 11, 1992.
Decided July 8, 1992.
 
 Before ALARCON, CYNTHIA HOLCOMB HALL and KLEINFELD, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 American Title Insurance Co. ("American") and First Commercial Title Co. ("First Commercial") appeal from the order granting partial summary judgment on the parties' cross-motions. American filed a three-count breach of contract action against First Commercial seeking payment under the indemnification clause of their agency agreement. The district court granted summary judgment in favor of First Commercial on one of the three counts on the ground that recovery was barred by the applicable Nevada statute of limitations. Thereafter, the district court granted summary judgment in favor of American on the remaining two counts.
 
 
 3
 American contends that the district court's grant of summary judgment in favor of First Commercial was improper because the district court incorrectly determined that the statute of limitations began to run when policyholders first notified American of claims against First Commercial. American argues that the statute of limitations began to run when First Commercial breached the contract by refusing to pay American for the losses it suffered after it settled the claims with the policyholders.
 
 
 4
 First Commercial raises two issues on appeal:
 
 
 5
 One. The district court should have allowed a jury to decide whether the indemnification agreement was modified by the alleged long-standing course of conduct between the parties.
 
 
 6
 Two. Section 13 of the agency agreement, as interpreted by the district court, shifts liability for policyholder claims from American to First Commercial, thereby transforming First Commercial from a title agent into a title insurer in violation of Nevada law.
 
 
 7
 We reverse the district court's grant of summary judgment in favor of First Commercial with regard to Count three of American's original complaint. We affirm the district court's grant of summary judgment on Counts one and two of American's complaint.
 
 I.
 
 8
 On November 1, 1963, American and First Commercial entered into a written contract entitled "Title Agency Agreement." This agreement designated First Commercial as American's agent "to solicit applications for title insurance and issue American's title insurance binders and policies" with regard to Nevada real estate. American served as underwriter for policies subsequently issued by First Commercial.
 
 
 9
 On February 17, 1989, American filed suit against First Commercial to recover losses incurred under a number of policies issued by First Commercial. In three separate instances American was forced to settle claims with policyholders because First Commercial negligently failed to exclude coverage for recorded, reserved easements across the policyholders' properties:
 
 
 10
 1. On March 15, 1977, First Commercial issued a Policy of Title Insurance to Patricia J. Mast ("Mast"). The policy failed to list as an exception a recorded, reserved easement across the Mast property. Subsequently, on March 26, 1987, Mast made a claim against American based on this easement. American settled Mast's claim for $16,907.10 later that year.
 
 
 11
 2. On October 18, 1981, First Commercial issued a Policy of Title Insurance to Gerald L. Bottorff ("Bottorff"). First Commercial failed to list as an exception a recorded, reserved easement across Bottorff's property. In August of 1984, Bottorff filed a claim with American. In 1986, American payed Bottorff $12,309.90 as settlement on his claim.
 
 
 12
 3. Between September 16, 1976, and January 13, 1977, First Commercial issued title insurance policies on four contiguous properties to John W. and Trudy T. Nunn, Elmer R. and Mardene W. Randall, Rick Busenbark, Edgar F. and Mary Lee Niethold. First Commercial failed to list a reserved, recorded easement across the rear portion of each lot. On May 10, 1977, the Nunns made a claim on their policy. Shortly thereafter, the remaining policyholders made claims. In May, 1983, American payed the policyholders $100,405.36 in settlement of their claims.
 
 
 13
 Count one of American's action sought recovery for the loss generated by the payment of the Mast claim, Count two sought recovery for the settlement of the Bottorff claim, and Count three sought recovery for the payment of the claims presented by Nunn, Randall, Busenbark and Niethold. American alleged that it was entitled to indemnification for payment on these claims based on section 13 of the Title Agency Agreement which states:
 
 
 14
 AGENT agrees that it will be liable to AMERICAN for any loss occurring under any binder or policy of title insurance under the terms of this agreement, which results from or occurs on account of, any claim against any title by reason of matters appearing of record against the same or as the result of negligence or default of any officer or employee of AGENT.
 
 
 15
 On April 4, 1990, First Commercial moved for summary judgment on the ground that American's claims were barred by Nevada's six-year statute of limitations for breach of written contracts. Nev.Rev.Stat. § 11.190(1)(b. In its motion for summary judgment, First Commercial argued that the statute of limitations began to run on the date that each defective title policy was issued. American responded that the statute did not begin to run until it suffered an actual loss, i.e. the date on which it made a payment to each policyholder.
 
 
 16
 The district court rejected both of these arguments and adopted the position that "the causes of action accrued under section 13 when American first discovered the recorded title defect which had been overlooked by First Commercial." Applying this standard, the district court granted summary judgment in favor of First Commercial on the third count of American's complaint. The district court denied First Commercial's motion for summary judgment on the first and second counts (the Mast and Bottorff claims).
 
 
 17
 On June 18, 1990, American filed its notice of appeal from the summary judgment granted in favor of First Commercial on Count three. On September 20, 1990, American filed a motion for summary judgment as to Counts one and two of the complaint. The district court granted American's motion, based on the language of section indemnity agreement, we hold that the statute of limitations for breach of contract actions began to run only after American suffered an actual loss on those policies. Pursuant to section 13 of the agreement, First Commercial was "liable to AMERICAN for any loss occurring ... as the result of [its own] negligence" (emphasis added). The definition of "loss" in section 14 does not apply to section 13, since section 13 qualifies the word "loss" to mean a payment to a policyholder resulting from or on account of a claim against the title by reason of matters appearing of record ... or [negligence or default] of AGENT." Under this language, American has no cause of action until there is a "loss ... on account of [a] claim," and a claim not resulting in a loss does not trigger the section 13 indemnity obligation. The requirement of loss as a condition of indemnification necessarily implies that the cause of action does not accrue until there is a loss, not just a claim of which American has notice. Accordingly, the statute of limitations on all three claims did not begin to run until after American paid the claims in May of 1983. When American filed its suit against First Commercial on February 17, 1989, its action as to Count three was not time-barred.
 
 III.
 
 18
 First Commercial asserts that section 13 of the contract is rendered ambiguous when read in connection with section 14. Section 14 provides:
 
 
 19
 [N]otwithstanding anything in this agreement to the contrary, the AGENT hereby agrees that the first Five Hundred Dollars ($500.00) of loss on each and every policy shall be borne solely by the AGENT. The term "loss" shall include all loss expenses.
 
 
 20
 First Commercial contends that the parties intended section 14 to subsume section 13 and thereby limit First Commercial's potential liability to American to $500 on any and all claims--without regard to negligence or fault. First Commercial argues that because the agreement is ambiguous, the court should look to the "practical construction and interpretation by the parties as evidenced by their conduct" in construing these two provisions. We disagree.
 
 
 21
 The language of sections 13 and 14 of the agreement is neither ambiguous nor contradictory. Losses incurred by American are indemnifiable under both sections. Section 14 indemnifies American against the first $500 of losses it suffers on all claims, whether or not these claims arise from the negligence of First Commercial. Section 13 indemnifies American against all losses on only some claims, those "appearing of record" and those "as the result of negligence or default." This might afford full indemnity, for example, to a recorded lien missed in a title search, while section 14 might indemnify only $500 of a claim on account of a forged signature or incompetent grantor in the chain of title, missed through no negligence or default of First Commercial. Given the clear language of sections 13 and 14, we need not look to the parties' conduct to interpret the agreement.
 
 
 22
 We also reject First Commercial's argument that sections 13 and 14 transfer liability for policyholder claims from American to First Commercial, effectively transforming First Commercial from a mere title agent into a title insurer in violation of Nev.Rev.Stat. §§ 679A and 680A.010 et seq.
 
 
 23
 Nev.Rev.Stat. §§ 679A and 680A.010 et seq. clearly define the respective roles and obligations of title insurers and their agents. The "Title Agency Agreement" designates First Commercial as American's agent "to solicit applications for insurance or to negotiate title insurance contracts on its behalf." Nev.Rev.Stat. § 692A.060. American is licensed to transact business as an insurer engaged in title insurance. Nev.Rev.Stat. § 692A.070. Although the manner in which these parties have chosen to allocate risks in section 13 assigns the entire loss on certain claims to First Commercial, First Commercial never becomes the principal who has entered the contract of insurance. Nev.Rev.Stat. § 679A.100.
 
 
 24
 We AFFIRM the district court's grant of summary judgment in favor of American on Counts one and two of American's complaint.
 
 
 25
 We REVERSE the district court's grant of summary judgment in favor of First Commercial on Count three.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3